# In the United States Court of Federal Claims

No. 12-251C
(Originally Filed: November 6, 2012)
(Reissued: November 9, 2012)*

* * * * * * * * * * * * * * * * * * * *

RES-CARE, INC.,

        *Plaintiff*,

v.

THE UNITED STATES,

        *Defendant*.

Bid protest; Job Corps Centers;
Small Business Set-Asides;
Statutory Construction

* * * * * * * * * * * * * * * * * * * *

    *Jonathan D. Shaffer*, Vienna, VA, for plaintiff.

    *Amanda L. Tantum*, Civil Division, Department of Justice, Washington, DC, for defendant.

————————

## OPINION

————————

BRUGGINK, *Judge*.

    This is a pre-solicitation protest of the Department of Labor's decision to designate the contract for operation of the Blue Ridge Job Corps Center ("Blue Ridge") as a small business set-aside. Plaintiff, Res-Care Inc., is the incumbent contractor. Because of the small business size limitations placed

---

    * Publication was deferred pending the parties' review for redaction of protected materials. With some exceptions, those redactions are indicated by brackets.

on this contract, Res-Care is precluded from qualifying for the award. Currently before the court are the parties' cross-motions for judgment on the administrative record, plaintiff's motion for leave to supplement the administrative record with the second declaration of its executive vice-president, and defendant's motion to strike those portions of plaintiff's memorandum in support of its motion for judgment on the administrative record that rely on extra-record evidence. The motions are fully briefed, and we heard oral argument on November 2, 2012. As we announced at the conclusion of oral argument, and for the reasons explained below, we deny plaintiff's motion to file the declaration, we deny its motion for judgment on the administrative record, we grant defendant's motion to strike, and we grant defendant's cross-motion for judgment on the administrative record.

BACKGROUND[1]

Res-Care currently operates Blue Ridge in Marion, Virginia under contract DOLJ08PA00001, which runs from April 1, 2008 until March 31, 2013. Administrative Record ("AR") 53. Blue Ridge is a job training facility with a capacity of 160 residential female students, 30 non-residential female students, and 10 non-residential male students. AR 2, 6. Before issuing a formal solicitation for a new contract, the Department of Labor ("DOL") published a Sources Sought Notice for Request for Information DOL121RI20442 ("sources sought notice") on December 5, 2011, which was later amended and republished on December 7, 2011.[2] AR 1, 5. The sources sought notice explained that "Job Corps is a national residential training and employment program administered . . . to address the multiple barriers to employment faced by at-risk youth throughout the United States." AR 2, 6. Specifically, the services sought included "educational and career technical skills training," operating the residential facility, providing meals and supervision for 160 residential female students, job placement, health services, and center oversight and management. AR 2, 6. The annual cost to run Blue Ridge is roughly $5 million. AR 54. The proposed contract carries a value of $25 million and would run for two years with three unilateral option years. AR 53-54.

---

[1] The facts are drawn from the administrative record.

[2] The only apparent difference between the first and second sources sought notices is the designation of the agency individual with whom potential contractors would communicate. AR 4, 8.

Although the sources sought notice was not limited to small businesses, DOL "encourage[d] firms that qualify under the Small Business Programs mentioned in Federal Acquisition Subpart 19, including 8(a), HUBZone and Service Disable Veteran Owned Small Business to respond," AR 1, with a "capabilities statement." AR 4. Potential contractors were asked to include in the capabilities statement their prior experiences running comparable facilities, providing similar services, and operating with comparable financial resources. AR 2-3. DOL also asked potential bidders to indicate on the cover letter of the capabilities statement whether they participate with a small business program. AR 1. DOL reserved "the right to compete any acquisition resulting from this survey among small businesses based on the responses received." AR 1.

DOL received five capabilities statements in response to its sources sought notice. Four of the five responses were from small businesses.[3] Res-Care did not respond to the sources sought notice. Based on the capabilities statements received from the five companies, DOL determined that two of the small businesses were unable to perform the contract because they lacked experience or failed to demonstrate sufficient financial wherewithal. AR 52, 56. The large business and two of the small businesses were deemed potentially capable of performing the contract. AR 52. That conclusion was based on a review of eleven areas of experience related to the work and an assessment of whether the businesses had access to financial resources to begin doing the work.

On March 9, 2012, DOL designated the contract for the operation of Blue Ridge as a 100% small business set-aside.[4] AR 53. The Division Chief for the Division of Job Corps Procurement determined that both requirements for setting aside the contract for a small business pursuant to Federal Acquisition Regulation ("FAR") part 19.502-2 had been met. Specifically, she

---

[3] [                    ] is a small business. AR 10. [
] is a disadvantaged small 8(a) corporation. AR 20-21. [
] is a woman-owned 8(a) small business. AR 40.
[                              ] is a small business under section 8(a). AR
51.1. [                              ] is a large business. AR 30.

[4] Under Federal Acquisition Regulation part 6.203, contracts may be set aside for small businesses to fulfill statutory policies relating to small business concerns. 48 C.F.R. § 6.203 (2012).

concluded that two small businesses were "capable under all of the capability areas identified" in the sources sought notice and that "there is a reasonable expectation that award[s] will be made at fair market prices" based on past offers made by the companies that were found to be capable of performing this contract.  AR 56.

DOL issued a pre-solicitation notice, DOL121RP20489, on April 6, 2012, regarding the operation of the Blue Ridge Job Corps Center.  The request was revised on April 25, 2012, to state that "[t]he solicitation for this requirement will be issued on or about May 4, 2012," and that the contract will be solicited as a "100% Set-Aside for Small Business."  AR 78-79.  Performance of the contract will begin on April 1, 2013.  AR 78.  The solicitation was subsequently issued on September 11, 2012, and modified on October 17, 2012.

Res-Care is not classified as a small business under the applicable regulations because its annual receipts exceed the limits set by the North American Industry Classification System ("NAICS").  AR 53.  NAICS codes are promulgated by the Office of Management and Budget and are used to classify an economic activity or industry for many purposes.  Using the already-established NAICS codes, the Small Business Administration then imposes its own limitations on size and revenue.  13 C.F.R. § 121.201 (2012).  Thus, when the contracting officer designated a NAICS code for small business set-aside, the effect was to both target the type of institutions solicited and simultaneously to impose size and revenue limitations on those bidders.  The revenue limit associated with NAICS code 611519, which is the code for the operation of Blue Ridge, caps awards to firms with no more than $35.5 million in annual receipts.  AR 2, 54; 13 C.F.R. § 121.201.  Therefore, if the contract for operation of Blue Ridge were designated for small businesses, any business with more that $35.5 million in annual receipts would be prohibited from competing.  Res-Care would not qualify.

On April 18, 2012, prior to DOL issuing a formal solicitation, Res-Care filed its complaint before this court seeking injunctive and declaratory relief.  Defendant filed the Administrative Record on May 14, 2012.  Plaintiff sought to supplement the Administrative Record with a declaration of its Executive Vice-President of Operations, Richard Myers, and with a report ("Rell & Doran Report") entitled "Analysis of Small Business Contracting in Job Corps," written by Peter Rell, the former National Director of Job Corps, and Vince Doran, the former President of Res-Care.  The court granted in part and

4

denied in part plaintiff's request.  With respect to the Rell & Doran Report, the court denied plaintiff's motion to supplement the record.  As for Mr. Myers' declaration, the court admitted it for the sole purposes of evaluating whether an injunction should issue in the event that plaintiff were to be successful on the merits.  Plaintiff again seeks to supplement the administrative record with an additional declaration from its vice-president.   Mr. Myers offers information concerning (1) Res-Care's effectiveness in operating Job Corps centers, (2) the harm that Res-Care will experience if it is excluded from the procurement process, (3) the poor performance record of small businesses in this field, and (4) his own qualifications to comment on the above-mentioned subjects.  Data is included in the declaration showing Res-Care's performance record.

The parties have filed cross-motions for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC").  *See* RCFC 52.1.  In its cross-motion for judgment on the administrative record, defendant asks the court to strike part of plaintiff's memorandum in support of judgment on the administrative record because it refers to the Rell & Doran Report and Mr. Myers' second declaration, which were not admitted into the record.

## DISCUSSION

Pursuant to the Tucker Act, we have jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award . . . or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1) (2006).  Res-Care is an "interested party" because it is a prospective bidder "whose direct economic interest would be affected by the award of the contract."  *Am. Fed'n of Gov't Employees, ALF-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir.  2001) (quoting 31 U.S.C. § 3551(2) (Supp. IV 1998)).  DOL's decision to designate the contract as a small business set-aside is made "in connection with" a proposed procurement and plaintiff alleges that the decision was made in violation of applicable statutes.  We therefore have jurisdiction.

I.      Extra-Record Evidence

We begin with the procedural questions raised by plaintiff's motion to supplement the administrative record with the second declaration of Mr. Myers, and defendant's motion to strike references in plaintiff's briefing to the Rell & Doran Report and to either of Mr. Myers' declarations.  We admitted the first Myers declaration for the limited purpose of supporting plaintiff's claim of injury, in the event the court reached the question of injunctive relief. Defendant is correct, however, that plaintiff makes liberal reference to the balance of the declaration as well as the Rell & Doran Report in its briefing. The substance of the declaration and the report is that plaintiff has done an excellent job for several years as the incumbent contractor and that small businesses have not done as well as large businesses in running Job Corps centers.  We agree with defendant that those extra-record references, particularly to the report, cannot be considered with respect to any issue in this bid protest other than potential injury to plaintiff.  The purpose of our review is to ensure that the agency complied with the applicable rules in deciding to move to a small business set-aside.  The fact that plaintiff has done a good job, and that small businesses as a group have not, is not relevant to any inquiry open to the court.  The evidence would only inform a judgment made at the policy level.

II.     Substantive Arguments

A.  Section 2887

The Workforce Investment Act ("WIA"), Pub. L. No. 105-220, 112 Stat. 936 (1998), amending various sections codified throughout Title 29, provides the following direction with respect to contracts to operate Job Corps Centers:

> *Except as provided in subsections (a) to (c) of section 3304 of Title 41, the Secretary shall select on a competitive basis* an entity to operate a Job Corps center . . . .   In developing a solicitation for an operator or service provider, the Secretary shall consult with the Governor of the State in which the center is located, the industry council for the Job Corps center (if established), and the applicable local board regarding the contents of such solicitation, including elements that will promote the consistency of the activities carried out through the

center with the objectives set forth in the State plan or in a local plan.

29 U.S.C. § 2887(a)(2)(A) (2006 & Supp. V 2012) (emphasis added) (hereafter "section 2887").  The critical language, to plaintiff, is the portion highlighted above.  Plaintiff argues that it precludes small business set asides, which are not specifically within the itemized exceptions to selection "on a competitive basis."  As we explain below, however, this assertion is based on an assumption we do not share, that small business set-asides are not conducted on a competitive basis.

The Secretary of Labor has statutory authority to adopt regulations implementing the WIA.  *Id.* § 2939.  The DOL regulation applicable to Job Corps contract awards repeats the language of section 2887, albeit by reference to a prior codification of CICA: "The Secretary selects eligible entities to operate contract centers and operational support service providers on a competitive basis in accordance with [FASA] unless section 303(c) and (d) of that Act apply."  20 C.F.R. § 670.310(a) (2012).  The regulations also direct that "[t]he requirements of the Federal Property and Administrative Services Act of 1949 [FASA], as amended . . . the Federal Acquisition Regulation [FAR] . . .; and the DOL Acquisition Regulation . . . apply to the award of contracts . . . ."  *Id.* § 670.320.

The exceptions referred to in section 2887 were incorporated within the amendments to FASA brought about by the Competition in Contracting Act (CICA), Pub. L. No. 98-369, 98 Stat. 494 (1984), and are now codified at 41 U.S.C. §§ 3304 (a)-(c) (Supp. V 2012).  The relevant excerpts from section 3304 follow:

(a) When noncompetitive procedures may be used.--An executive agency may use procedures other than competitive procedures only when--

(1) the property or services needed by the executive agency are available from only one responsible source and no other type of property or services will satisfy the needs of the executive agency;

(2) the executive agency's need for the property or services is of such an unusual and compelling urgency that the Federal Government would be

7

> seriously injured unless the executive agency is permitted to limit the number of sources from which it solicits bids or proposals;
>
> (3) it is necessary to award the contract to a particular source . . . ;
>
> . . . .
>
> (b) Property or services deemed available from only one source.
>
> . . .
>
> (c) Property or services needed with unusual and compelling urgency. . . .

41 U.S.C. § 3304(a)-(c).  In essence, section 3304 provides a number of instances in which "noncompetitive procedures" may be used.  There is no suggestion here that DOL invoked any of these exceptions.

Instead, in initiating the sources sought notice and the subsequent small business set aside, the agency utilized the procedures authorized by 41 U.S.C. § 3303, "Exclusion of . . . solicitation to small business concerns."  Paragraph (b) permits the agency to procure services "using competitive procedures, but excluding other than small business concerns." 41 U.S.C. § 3303(b).  The agency, using the procedures set out in FAR part 19.502-2,[5] concluded that there was a "reasonable expectation" that "[o]ffers will be obtained from at least two responsible small business concerns" offering the services sought. 48 C.F.R. § 19.502-2(b)(1).

Plaintiff's principal argument is that the agency violated WIA by utilizing the small business set-aside procedures of section 3303.  The critical assumption behind its argument is that small business set asides are not a form of competition.  Plaintiff construes the language of section 2887—"Except as provided in subsections (a) to (c) of section 3304 of Title 41, the Secretary shall select on a competitive basis"—to preclude small business set asides under section 3303 because WIA only exempts procedures under section 3304 from its requirement that a selection be made on a "competitive basis."  The structural argument it makes is that, by not listing small business set asides as one of the specific exceptions, Congress meant to exclude it as a procurement vehicle for WIA.

---

[5] This provision of the FAR governs the appropriate use of small business set-asides.

Plaintiff's argument only succeeds if small business set asides are noncompetitive. If in fact they are a type of competitive procurement, there is no tension at all between WIA and the use of section 3303 procedures.

The larger context of section 3303 within Chapter 33 of Title 41 is relevant. Section 3301 is entitled "Full and open competition." Paragraph (a) provides that "[e]xcept as provided in sections 3303, 3304(a), and 3305 . . . an executive agency in conducting a procurement . . . shall . . . obtain full and open competition through the use of competitive procedures in accordance with the requirements of this division and the [FAR]." 41 U.S.C. § 3301(a)(1) (Supp. V 2012). Sections 3303, 3304(a), and 3305 contain procedures that are exempted from the requirement of "full and open competition." *Id.* § 3301(a). That does not mean, however, that all of the devices listed in sections 3303-3305 are noncompetitive. The phrase "full and open competition" is not synonymous with "competitive procedures" or "competitive basis."

Section 3303 permits the "[e]xclusion of other than small business concerns," as well as exclusion of a particular source. *Id.* § 3303(a), (b). Paragraph (b), dealing with small business set-asides, specifically requires the use of competitive procedures. *Id.* § 3303(b) (authorizing an agency to procure goods and services "using competitive procedures but excluding other than small business concerns"). Section 3304, in contrast, sets out a number of special circumstances in which "noncompetitive procedures" may be used. *Id.* § 3304. Section 3305 permits simplified procedures for small purchases, although it requires the agency to "promote competition to the maximum extent practicable." *Id.* § 3305(d).

The only one of these sections which specifically contemplates noncompetitive procedures is 3304. As defendant points out, CICA was amended and reorganized in 2011, in part to "conform to the understood policy, intent, and purpose of Congress in the original enactments . . . and remove ambiguities, contradictions, and other imperfections." Pub. L. No. 111-350, § 2, 124 Stat 3677, 3677 (2011), *codified at* 41 U.S.C. § 101 (Supp. V 2012). One of the effects of that reorganization was that sole source and related noncompetitive awards were assembled under the new section 3304, which bears the title "Use of Noncompetitive Procedures." We think a fair reading of that caption is that other procedures, such as small business set asides are, by definition, not "noncompetitive."

9

The terms "full and open competition" and "competitive procedures," are obviously close kin, but there is no logical reason to assume that all procedures which are not within the scope of section 3304 must therefore meet the test for "full and open competition." It is more logical to assume that the terms are not identical for a reason. The term "full and open competition," is defined in the FAR. When used with respect to a contract action, it "means that all responsible sources are permitted to compete." 48 C.F.R. § 2.101. In other words, "full and open competition," at one extreme, and "noncompetitive procedures" at the other extreme, do not necessarily constitute the entire universe of possible procurement mechanisms. The most natural reading of these five provisions is that, while small business set asides are not a type of "full and open competition" referred within the meaning of section 3301, they are also not within the "noncompetitive" procedures covered by section 3304. The architecture of Title 41 thus does not support plaintiff's argument.

It would be helpful if the term "competitive basis" were defined within WIA. It is not. Nor is it defined within CICA. Defendant points out, however, that CICA defines a similar phrase, "competitive procedures," to include procurements that are set-aside to promote small businesses:

> [T]he term "competitive procedures" means procedures under which an executive agency enters into a contract pursuant to full and open competition. The term also includes—
>
> > . . . .
> >
> > (4) procurements conducted in furtherance of section 15 of the Small Business Act . . . as long as all responsible business concerns that are entitled to submit offers for those procurements are permitted to compete . . . .

41 U.S.C. § 152. CICA thus specifically treats small business set asides as requiring competition.

The common usage of the terms "competition" and "competitive" also support defendant's view. "When terms are not defined, it is a basic principle of statutory interpretation that they are deemed to have their ordinary meaning." *Nielson v. Shinseki*, 607 F.3d 802, 805 (Fed. Cir. 2010) (citing *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982); *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Webster's Third New International Dictionary 464 (1993), defines competitive as "characterized by, arising from, or designated

10

to exhibit rivalry among two or more equally matched individuals or forces especially for a particular goal, position or reward."   Another dictionary defines "competitive" as "involving, or determined by competition" and "competition" as "[r]ivalry between two or more businesses striving for the same customers or market." Webster's II New Riverside University Dictionary 290 (1984). In the context of a procurement, the goal would be award of the contract.   There must be a minimum of two potential bidders before a procurement can be set aside for small businesses.  In the ordinary sense, then, small business set asides are competitive.

We think it is fair to refer to CICA to consider what is meant by "on a competitive basis" because section 2887 draws the connection by excepting procedures set out in section 3304.   In addition, DOL is given statutory authority to develop regulations, and those regulations direct the use of the FAR in DOL procurements. 29 U.S.C. § 2939; 20 C.F.R. § 670.320. Short of fabricating its own comprehensive and parallel body of procurement regulations, it is difficult to conceive that DOL would do anything other than mimic the FAR to the extent that no direct conflict would be precipitated.

We conclude, in short, that there is no ambiguity in section 2887.  Small business set asides are not precluded.  Even if the statute were unclear, however, we agree with defendant that, as the agency charged with implementing the statute, 29 U.S.C. § 2939(a), the DOL is entitled to some deference in construing section 2887 the way it has. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-45 (1984).  The agency has adopted regulations specifically authorizing use of small business set asides in contracting for Job Corps training centers.  20 C.F.R. § 670.310 (2012); 48 C.F.R. § 2919.502.

B.  Application of the "Rule of Two"

Plaintiff's alternative argument is that the contracting officer violated the "rule of two," which requires the contracting officer to have a reasonable belief that there are at least two responsible small businesses that can satisfy the contract requirements at a fair market price.  *See* 48 C.F.R. § 19.502-2. While plaintiff does not specifically challenge the contracting officer's finding that the two small businesses involved here meet that test, it contends that there was substantial evidence available to show that small businesses, in general, have a record of poor past performance in operating Job Corps centers.

11

It bears repeating here that the only evidence supporting plaintiff's argument has been struck by the court: the Myers' declaration and the Rell & Doran Report. These materials are plainly "extra-record." They were either not available to the contracting officer (the Myers declaration), or, even if generally available as background on the Job Corps program (the Rell & Doran Report), are not appropriate for court consideration on the narrow question of whether the contracting officer was arbitrary or capricious in concluding that at least two responsible small businesses were capable of bidding the contract work at a fair price. What plaintiff urges the court to do is determine that it was arbitrary or capricious for the agency to assume the presence of two such small firms because, *in general*, small businesses have underperformed in the past. Such guilt by association may have been an exercise in common sense, but it would only have informed a policy judgment. It does not draw into question the particular determination made here. The contracting officer had before her information on which to base the determination that, based on the types of experience viewed as relevant, the two surviving small businesses could compete.

## CONCLUSION

For reasons explained above, we deny plaintiff's motion to supplement the administrative record. We grant defendant's motion to strike references to the Myers declaration and the Rell & Doran Report to the extent the Myers declaration has not already been admitted. We deny plaintiff's motion for judgment on the administrative record, and we grant defendant's cross-motion for judgment on the administrative record and dismiss the complaint. The clerk is directed to enter judgment accordingly. No costs.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge

12